THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIMOTHY LINEHAN, on behalf of Plaintiff and a class,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANCEONE RECEIVABLES MANAGEMENT, INC.,<br><br>Defendant. | CASE NO. C15-1012-JCC<br><br>ORDER ON MOTIONS TO DISMISS |

This matter comes before the Court on the motions to dismiss by Defendants Merchant's Credit Corporation, Jason Woehler, and Erik Bakke, Sr. ("Merchant Defendants") (Dkt. No. 40)[1]; Physicians and Dentists Credit Bureau, Inc. ("P&D") (Dkt. No. 61); Asset Recovery Group, Inc. ("Asset") (Dkt. No. 133); and Robert S. Friedman (Dkt. No. 134). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and, for the reasons explained herein, GRANTS in part and DENIES in part the Merchant Defendants' motion (Dkt. No. 40); GRANTS in part and DENIES in part P&D's motion (Dkt. No. 61); DENIES Asset's motion (Dkt. No. 133); and GRANTS in part and DENIES in part Friedman's motion (Dkt. No. 134).

---

[1] Defendants Audit & Adjustment Company, Inc., Kimberlee Walker Olsen, and Robert Friedman filed notices of joinder as to this motion. (Dkt. Nos. 47, 48, 109.)

ORDER ON MOTIONS TO DISMISS
PAGE - 1

## I. BACKGROUND

Plaintiffs in these consolidated cases assert that Defendants filed debt collection suits in an improper venue, violating the Fair Debt Collection Practices Act (FDCPA). *See* 15 U.S.C. § 1692i(a)(2) ("Any debt collector who brings any legal action on a debt against any consumer shall . . . bring such action only in the judicial district or similar legal entity in which such consumer signed the contract sued upon; or in which such consumer resides at the commencement of the action."). Defendants filed their suits in specific subdivisions of the King County District Court pursuant to the court's general administrative orders (GAOs). However, Plaintiffs do not reside in the subdivisions where the suits against them were filed, nor were their contracts signed there. Plaintiffs allege that each subdivision constitutes a separate "judicial district or similar legal entity" under § 1692i and that Defendants thus violated the FDCPA by filing in different divisions.

The Court has previously ruled on three motions to dismiss in these consolidated cases. (*See* Dkt. No. 26; Dkt. No. 44; C15-1196-RSL, Dkt. No. 85.) The Court reached the following relevant conclusions:

- "[T]he divisions of the King County District Court constitute judicial entities for the purposes of § 1692i." (Dkt. No. 26 at 4; *see also* C15-1196, Dkt. No. 85 at 4-8.)

- "An FDCPA violation constitutes a *per se* violation of the [Washington Consumer Protection Act (WCPA)]." (Dkt. No. 26 at 4; *see also* Dkt. No. 44 at 4.)

- "[A]n attorney and client cannot be co-conspirators [because w]here an agent is acting within the scope of his or her agency, the agent's acts are legally considered to be the acts of the principal." (Dkt. No. 44 at 4.)

- "To the extent [a court administrative order] is inconsistent with the FDCPA, it is preempted." (C15-1196, Dkt. No. 85 at 3; *see also* Dkt. No. 26 at 3.)

The Court now considers the four remaining motions to dismiss (Dkt. Nos. 40, 61, 133, 134). The motions are as follows:

1  (1) The Merchant Defendants move to dismiss the second amended complaint by
2 Plaintiffs Portia Jones and Scott Jones (Dkt. No. 89), arguing that § 1692i is void for vagueness
3 and that, if this case is not dismissed, King County must be joined as a necessary party.[2] (Dkt.
4 No. 40 at 2.)

5  (2) P&D moves to dismiss Plaintiff Joshua Auxier's first amended complaint (C16-0025-
6 JCC, Dkt. No. 11), arguing that King County—not its subdivisions—is the proper judicial
7 district under § 1692i; that § 1692i is void for vagueness; that § 1692i, as interpreted by this
8 Court, violates the separation of powers doctrine; and that Auxier fails to plead an adequate
9 WCPA or civil conspiracy claim. (Dkt. No. 61 at 6-7.)

10  (3) Asset moves to dismiss the complaint by Plaintiffs Natalie Simmons, *et al.*
11 ("Simmons Plaintiffs") (C16-0794-JCC, Dkt. No. 1), arguing that "judicial district or similar
12 legal entity" does not mean each subdivision of the King County District Court and that
13 Plaintiffs fail to plead an adequate claim under the WCPA. (Dkt. No. 133 at 6.)

14  (4) Friedman moves to dismiss the complaint by the Simmons Plaintiffs, arguing that
15 § 1692i is void for vagueness; that the Simmons Plaintiffs lack standing to pursue their FDCPA
16 claim; that they fail to plead an adequate claim under the WCPA; and that, if this case is not
17 dismissed, King County must be joined as a necessary party.[3] (Dkt. No. 134 at 1-2.)

18  //
19  //
20  //

---

[2] The Merchants Defendants also initially argued that § 1692i violates the Tenth Amendment, but later withdrew that argument. (Dkt. No. 40 at 2; Dkt. No. 57 at 9.)

[3] Friedman also raises a number of arguments for the first time in his reply brief in support of the Merchant Defendants' motion to dismiss. (*See* Dkt. No. 58.) These arguments are untimely raised. *See Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented for the first time in Reply are waived."). Moreover, given that Friedman's arguments are largely fact-based, they are more appropriately raised in the summary judgment context.

## II. DISCUSSION

### A. Fed. R. Civ. P. 12(b)(6) Standard

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To grant a motion to dismiss, the court must be able to conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

### B. Judicial Notice

On a motion to dismiss, the Court typically looks only to the face of the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, at any stage of the proceeding, the Court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2), (d). The Court must take such notice if a party requests it and supplies the Court with the necessary information. Fed. R. Evid. 201(c)(2).

Here, multiple parties ask the Court to take judicial notice of the existence of certain Washington statutes, codes, rules, orders, and court records. (*See* Dkt. No. 40 at 2; Dkt. No. 61 at 3; Dkt. No. 119 at 5-6; Dkt. No. 134 at 3; Dkt. No. 145 at 5; Dkt. No. 146 at 11 n.6.) The Court finds that these facts cannot be reasonably disputed, because they come from public records whose accuracy cannot be reasonably questioned. The parties have supplied the Court with the necessary information to make this determination. Therefore, the Court GRANTS the requests to judicially notice these documents.

### C. Analysis

Because many of Defendants' arguments overlap, the Court will address issues by subject matter, rather than by individual motion. First, however, the Court dismisses arguments that have already been resolved. To the extent any Defendant argues that "judicial district or similar legal entity" does not mean a subdivision of King County, the Court has already rejected this argument

and concluded to the contrary. (*See* Dkt. No. 26 at 3-4; Dkt. No. 44 at 3; C15-1196-RSL, Dkt. No. 85 at 4-8.) In addition, the Court has ruled that a Plaintiff may not bring a civil conspiracy claim based on the relationship between a debt collector and its attorney. (*See* Dkt. No. 44 at 4-5.) Finally, multiple Defendants seek to dismiss WCPA claims, alleging that Plaintiffs failed to meet one or more requirements of that statute. But, as this Court already acknowledged, an FDCPA violation constitutes a *per se* violation of the WCPA. *See Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 897 (Wash. 2009) ("When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA and the FTCA under state and federal law, reflecting the public policy significance of this industry."). If Plaintiffs have articulated a violation of the FDCPA, so too have they articulated a violation of the WCPA. (*See* Dkt. No. 26 at 4; Dkt. No. 44 at 4.)

Accordingly, Asset's motion to dismiss is DENIED in full; P&D's motion is GRANTED as to Auxier's civil conspiracy claim; and P&D's motion is DENIED as to Auxier's WCPA claim and as to the argument that King County is the proper "judicial district or similar legal entity" under § 1692i.

  1. Void for Vagueness

The Merchant Defendants, P&D, and Friedman assert that § 1692i, as applied in the context of King County, is void for vagueness. (Dkt. No. 40 at 6; Dkt. No. 61 at 23; Dkt. No. 134 at 11.) The vagueness doctrine is rooted in due process, stemming from the notion that it would be unfair to punish persons without adequate notice. *See Connally v. Gen. Constr. Co.*, 269 U.S. 385, 390-91 (1926). In the civil context, lesser specificity is required to overcome a vagueness challenge. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982). The Court asks whether the statute is "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Connally*, 269 U.S. at 391. Where, as here, a statute dictates or forbids certain conduct, its terms must not be so vague that people of "common intelligence must necessarily guess at its meaning and differ as to

its application." *Id.*

Citing to King County code, Washington law, and the GAOs, Defendants maintain that, in the context of this case, the phrase "judicial district or similar legal entity" does not provide adequate clarity. (Dkt. No. 40 at 7; Dkt. No. 134 at 13.) The Court disagrees. As both the undersigned and Judge Lasnik previously noted, the particular features of the King County District Court indicate that the relevant body is the subdivision. Although King County Code (KCC) § 2.68.070 states that "there is created a single district court, whose boundaries are all the area within the boundaries of King County," other aspects of its administration and structure show that its subdivisions are meaningful. "Venue," as prescribed in the Washington venue statute, includes both the "district" venue and the "division" venue of the King County District Court. Local Civil Rule (LCRLJ) 3.1. The Revised Code of Washington then provides that a debt collection action "may be brought in any district in which the defendant . . . resides at the time the complaint is filed . . . ." Wash. Rev. Code § 3.66.040(1). In addition, the court's local rules provide for transfers between the administrative divisions. Local Administrative Rule 0.18(2). As the Ninth Circuit indicated, a transfer mechanism is relevant when analyzing whether a debt collector violated § 1692i. *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1515 (9th Cir. 1994).

Importantly, these provisions are in keeping with the spirit of KCC § 2.68.005(A), which provides that "a unified, countywide district court, utilizing existing court facilities as satellites, *while at the same time supporting the concept of local filing and handling of cases*, would provide for a more equitable and cost-effective system of justice for the citizens of King County." (Emphasis added.) This "local filing and handling" provision—especially understood in the context of a large county such as this—reflects a desire to provide a convenient venue for litigants. Similarly, the goal of the FDCPA is to provide a convenient venue for debtors. *See* 15 U.S.C. § 1692(a), (e).

Thus, when one considers the FDCPA's intent, the *Suesz*[4] court's interpretation of "judicial district or similar legal entity" as "the smallest geographic area that is relevant for determining venue," and the King County District Court's structure, one can understand that § 1692i requires a debt collector to file in the correct subdivision.

Further, to the extent Defendants argue that the conflict between § 1692i and the GAOs renders the statute vague, they are mistaken. If this were true, every finding of preemption would lead to a finding of vagueness.

Finally, Defendants rely heavily on the fact that the Judge Lasnik found § 1692i to be ambiguous. But, a statute's ambiguity does not necessarily render it unconstitutional. "Ambiguity is inherent in language, and all laws will have some vagueness." ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 972 (4th Ed. 2011). The question is one of constitutionality, not crystal clarity.

Accordingly, the Court DENIES Defendants' motions to dismiss on vagueness grounds.

### 2. Separation of Powers

P&D asserts that this Court's interpretation of § 1692i violates the separation of powers between the legislature and the judiciary. (Dkt. No. 61 at 8.) This is so, P&D maintains, because a "court's ability to enforce its own rules and control the disposition of causes on its docket is essential to a court's judicial power and integrity." (*Id.* at 9.) This argument conflates the separation of powers doctrine and the relationship between federal and state law. The two issues are "quite distinct. The subordination of state to federal sovereignty has nothing to do with the allocation of power among coordinate branches of the federal government." *United States v. City of Philadelphia*, 644 F.2d 187, 223 n.25 (3d Cir. 1980).[5]

---

[4] *Suesz v. Med-1 Solutions Inc.,* 757 F.3d 636, 644 (7th Cir. 2014).
[5] *See also* James B. Thayer, *The Origin and Scope of the American Doctrine of Constitutional Law*, 7 Harv. L. Rev. 129, 136 n.1 (1893) ("But at last the convention, rejecting all these, settled down upon the common expedients of two legislative houses, to be a check upon each other, and of an executive revision and veto, qualified by the legislative power of

Case 2:15-cv-01012-JCC   Document 162   Filed 09/13/16   Page 8 of 17

This case does not implicate separation of powers. Rather, it raises an issue of preemption. "Under the Supremacy Clause of the U.S. Constitution, state laws that interfere with or contradict federal law are invalid." *Lensch v. Armada Corp.*, 795 F. Supp. 2d 1180, 1185 (W.D. Wash. 2011) (citing U.S. Const. art. VI cl. 2). Even if a state law does not explicitly conflict with federal law, it can be preempted if it "stands as an obstacle to the fulfillment of the intent and objectives of Congress." *Lensch*, 795 F. Supp. 2d. at 1185. Federal preemption applies equally to court orders. *See, e.g.*, *Carpenters Pension Trust for S. Calif. v. Kronschnabel*, 632 F.2d 745, 747 (9th Cir. 1980) (considering whether ERISA preempted state court order); *Metro. Life Ins. Co. v. McShan*, 577 F. Supp. 165 (E.D. Cal. 1983) (concluding that FEGLIA preempted state court order). To the extent the King County GAOs conflict with § 1692i, they are preempted. (*See* Dkt. No. 26 at 3-4.)

Regarding federalism considerations, the Seventh Circuit discussed the relationship between the FDCPA and state law as follows:

> The [FDCPA] does not tell states how to organize or operate their court systems. Nor does it directly control court procedures such as venue rules. A debt collector for consumer debts may comply with state law, obtain a perfectly valid state court judgment, and simultaneously violate the FDCPA by suing in the wrong venue.
>
> Suppose, for example, that state law allowed venue in the township where the plaintiff does business, and suppose a debt collector filed all its consumer debt collection suits in that township regardless of where the defendants lived or where the contracts giving rise to the alleged debts had been signed. Those suits would comply with state law but would violate the FDCPA. Such violations would not undermine the validity of state court judgments in favor of a debt collector, but they would provide the basis for federal remedies against the debt collector.
>
> In essence, then, the FDCPA takes state courts as states choose to structure and

reconsideration and enactment by a majority of two-thirds; upon these expedients, and upon the declaration that the constitution, and constitutional laws and treaties, shall be the supreme law of the land, and shall bind the judges of the several States. This provision, as the phrasing of it indicates, was inserted with an eye to secure the authority of the general government as against the States, *i.e.*, as an essential feature of any efficient Federal system, and not with direct reference to the other departments of the government of the United States itself.").

ORDER ON MOTIONS TO DISMISS
PAGE - 8

> operate them. Section 1692i then provides federal remedies for violations of the new federal requirements for venue in consumer debt-collection cases covered by the federal law. The remedies are available whether or not the filing of the case complies with state law.

*Suesz v. Med-1 Solutions Inc.,* 757 F.3d 636, 648 (7th Cir. 2014).

The concurrence in *Suesz* commented on a potential federalism issue, noting that "[o]perating a judicial system is a core function of state government" and that "the States have the sovereign authority to structure their court systems and establish their own jurisdictional and procedural rules." *See id.* at 652-53 (Sykes, J., concurring). To resolve this issue, the *Suesz* court reads § 1692i as a penalty on debt collectors who violate the FDCPA—not as a venue rule for state courts to follow. *See id.* at 648; *see also id.* at 652-53 (Sykes, J., concurring). This Court reads the statute similarly: Section 1692i imposes no requirement on state courts, instead obligating debt collectors to refrain from harmful practices.

However, the Court recognizes that its finding of preemption has an impact on the state court's orders. And, the *Suesz* concurrence noted that, practically speaking, there "may not be much difference" between a venue rule for state courts and a damages remedy for violating a federally-prescribed venue rule in state court. *Id.* at 653 (Sykes, J., concurring). While not concluding that the statute was unconstitutional, the concurrence cautioned that § 1692i—even as read by the court—might run afoul of federalism principles. *Id.*

When considering recent instances of congressional action and the Tenth Amendment, the U.S. Supreme Court has focused in large part on the amount of control Congress attempted to exercise. *See, e.g.*, *Reno v. Condon*, 528 U.S. 141 (2000); *Printz v. United States*, 521 U.S. 898 (1997); *New York v. United States*, 505 U.S. 144 (1992); *South Dakota v. Dole*, 483 U.S. 203 (1987). For example, in *Dole*, the Court upheld a conditional grant of federal money because the incentive comprised only five percent of obtainable funds, and thus was not "so coercive as to pass the point at which 'pressure turns into compulsion.'" 483 U.S. at 211 (quoting *Steward Machine Co. v. Davis,* 301 U.S. 548, 590 (1937)). By contrast, in *New York*, the Court held that a federal law impermissibly "commandeer[ed]" state governments by forcing them to participate

in a federal regulatory program or accept ownership of radioactive waste. 505 U.S. at 174-76. Similarly, in *Printz*, the Court invalidated a federal provision requiring state law enforcement to conduct background checks on handgun purchasers. 521 U.S. at 935. The Court stated: "We held in *New York* that Congress cannot compel the States to enact or enforce a federal regulatory program. Today we hold that Congress cannot circumvent that prohibition by conscripting the States' officers directly." *Id.* Most recently, in *Reno*, the Court rejected a challenge to a federal statute that prohibited states and private individuals from disclosing personal information gained through departments of motor vehicles. 528 U.S. at 143-44. The Court reasoned that the statute did not violate the principles set forth in *New York* and *Printz* because it established a prohibition of conduct, rather than affirmative requirements. *See id.* at 150-51.

Unlike the legislation discussed above, § 1692i does not explicitly dictate state action, either by incentive or command. It places requirements on debt collectors who, unlike the officers in *Printz*, are in no way stand-ins for the State. As for the FDCPA's indirect impact on the State, this Court has determined that, where the King County GAOs and § 1692i conflict, the GAOs are preempted. This indirect result is less coercive than the congressional action in *Printz*, *New York*, and even *Dole*. Moreover, this preemptive effect, like the statute in *Reno*, is merely a prohibition on the state court. It "does not require the [King County District Court] to enact any laws or regulations, and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals." *See Reno*, 528 U.S. at 151. The Court thus concludes that § 1692i, as applied here, does not violate the Tenth Amendment.

P&D's motion to dismiss on separation of powers/federalism grounds is DENIED.

3. Article III Standing

Friedman argues that the Simmons Plaintiffs lack standing to bring their FDCPA claims, because they have not articulated a concrete injury-in-fact. (Dkt. No. 134 at 1-2.) To satisfy Article III's standing requirements, a plaintiff must show that he or she "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical."[6] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000). Concreteness and particularization are two separate requirements. *See Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1548 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). "A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (internal quotations omitted).

A plaintiff cannot establish standing by merely alleging a "bare procedural violation." *Id.* at 1550. For example, in *Spokeo*, plaintiff Thomas Robins alleged a violation of the Fair Credit Reporting Act (FCRA), which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. *Id.* at 1545; 15 U.S.C. § 1681e(b). Robins discovered that defendant Spokeo, Inc. had a consumer profile on him that contained the following incorrect information: "he is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree." *Spokeo*, 136 S. Ct. at 1546. The Ninth Circuit concluded that Robins established standing because he "allege[d] that Spokeo violated *his* statutory rights, not just the statutory rights of other people." *Id.* at 1548. The Supreme Court remanded the case, reasoning that the Ninth Circuit considered only particularization, not concreteness. *Id.* at 1548-50. In reaching this conclusion, the Court noted that "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1550.

The *Spokeo* Court clarified, though, that concrete is "not necessarily synonymous" with tangible. *Id.* at 1549 ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."). The Court explained that, in "determining whether an intangible harm constitutes injury in fact,

---

[6] A plaintiff must also show that "the injury is fairly traceable to the challenged action of the defendant" and that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000). These requirements have not been raised here.

both history and the judgment of Congress play important roles." *Id.* "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578). Accordingly, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549.

Since *Spokeo*, the Eleventh Circuit and multiple district courts have considered whether a violation of the FDCPA itself confers standing on a plaintiff, and they have answered that question in the affirmative:

- "The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA."
  *Church v. Accretive Health, Inc.*, __ Fed. Appx. __, 2016 WL 3611543 at *3 (11th Cir. 2016).

- "The FDCPA unambiguously grants recipients of debt-collection communications (such as Prindle) a right to be free from abusive collection practices. In other words, § 1692e of the FDCPA 'create[s] a private duty owed personally to' a consumer to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt. As such, because Prindle had a personal statutory right to be free from abusive debt-collection practices, and because she has alleged facts plausibly showing that Carrington violated that right, she 'need not allege any additional harm.'"
  *Prindle v. Carrington Mortg. Servs., LLC*, 2016 WL 4369424 at *11 (M.D. Fla. Aug. 16, 2016) (quoting *Spokeo*, 136 S. Ct. at 1549, 1554).

- "Plaintiff's injury is also the unlawful disclosure of legally protected information. . . . [B]oth history and the judgment of Congress demonstrate that the unlawful disclosure of legally protected information is a concrete harm that is sufficient to confer standing."
  *Daubert v. Nra Grp., LLC*, 2016 WL 4245560 at *4 (M.D. Pa. Aug. 11, 2016).

- "SLS's alleged failure to provide the Quinns with information required under the FDCPA constitutes a sufficiently concrete harm for purposes of Article III standing."
  *Quinn v. Specialized Loan Servicing, LLC*, 2016 WL 4264967 at *5 (N.D. Ill.

Aug. 11, 2016).

- "Through the FDCPA, Congress created statutory legal rights to be free from certain abusive debt collection practices and a debt collector's violation of those rights may constitute a concrete and particularized injury. . . . Plaintiff's lawsuit does not seek to merely vindicate an interest in defendant's procedural compliance with the FDCPA; rather, plaintiff's suit is based on her claim that defendant violated her substantive rights under the FDCPA by its conduct and communications regarding plaintiff's debt."
  *Irvine v. I.C. Sys., Inc.*, __ F. Supp. 3d. __, 2016 WL 4196812 at *3 (D. Co. July 29, 2016).

- "Plaintiff has statutorily-created rights to be free from a debt collector's inappropriate attempts to collect a debt that he is no longer responsible for; to be free from being contacted from a debt collector who knows he is represented; and to be free from being subjected to false, deceptive, unfair, or unconscionable means to collect a debt."
  *McCamis v. Servis One, Inc.*, 2016 WL 4063403 at *2 (M.D. Fla. July 29, 2016).

- "Congress, through the FDCPA, entitled the plaintiff to certain information, and thus an alleged invasion of this right is not hypothetical or uncertain."
  *Dickens v. GC Servs. Ltd. P'ship*, 2016 WL 3917530 at *2 (M.D. Fla. July 20, 2016).

- "Here, although Lane concedes that he did not suffer actual monetary damages, the complaint does allege that the correspondence sent by Bayview contained 'threats which override Plaintiff[']s rights found in the above stated correspondences,' namely, the right to verification. The concrete harm, then, is the loss of the right to verification, which is enough to satisfy the concreteness requirement of Article III standing."
  *Lane v. Bayview Loan Servicing, LLC*, 2016 WL 3671467 at *5 (N.D. Ill. July 11, 2016).

- "The incorrect information contained in the complaint could have affected the litigation strategy that Tourgeman and his lawyer chose to pursue, could have potentially led to lost opportunities to settle the debt, and could have exposed Tourgeman to the possibility a default judgment. These scenarios are all examples of actual harm that Tourgeman was at risk of facing because of the inaccuracies in the complaint he received, therefore the concreteness requirement for Article III standing has been satisfied."
  *Tourgeman v. Collins Financial Servs., Inc.*, __ F. Supp. 3d __, 2016 WL 3919633 at *3 (S.D. Cal. June 16, 2016).

The Court finds this approach persuasive and sound, and adopts it here. The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those

1 practices would themselves constitute a concrete injury. *See* 15 U.S.C. § 1692(a), (e); *accord*

2 *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 827 (E.D. Va. 2015) ("The 'injury in fact'

3 suffered by Plaintiffs under the FDCPA is not any actual economic loss, but rather being

4 subjected to the allegedly 'unfair and abusive practices' of the Collection Defendants.").

5       Friedman argues that a venue choice dictated by court order does not amount to an

6 abusive or deceptive practice, and thus the right to be free from abusive debt collection practices

7 is not implicated here. (*See* Dkt. No. 149 at 5.) But even if a debt collector's motives are not

8 nefarious, consumers may still experience the underlying harm of having to defend suits "in

9 courts which are so distant or inconvenient that consumers are unable to appear." *See* S. Rep. No.

10 95-382, at 1 (1977). While these consolidated cases may not present a classic example of forum

11 abuse, the Court finds that the intent behind the FDCPA is still implicated.

12       By alleging a violation of § 1692i, the Simmons Plaintiffs articulated a concrete harm.[7]

13 Friedman's motion to dismiss on standing grounds is DENIED.

14       4.  <u>Join King County as Necessary Party</u>

15       The Merchant Defendants and Friedman argue that, if the FDCPA claims are not

16 dismissed, King County must be joined as a necessary party under Fed. R. Civ. P. 19. (Dkt. No.

17 40 at 14; Dkt. No. 134 at 15.)

18       Under Rule 19:

19       A person who is subject to service of process and whose joinder will not deprive
20       the court of subject-matter jurisdiction must be joined as a party if:

21       (A) in that person's absence, the court cannot accord complete relief among
      existing parties; or

---

[7] The Simmons Plaintiffs also allege that default judgments was entered against them "for the principal amounts claimed, plus prejudgment interest, statutory attorney fees, a case filing fee, ex parte fee, and service of process fee, plus post-judgment interest at 12% per annum." (C16-0794-JCC, Dkt. No. 1 at 3-4.) It is conceivable that the distance of the venue impeded their responses, thus also causing economic harm. This was not explicitly alleged, however.

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Defendants rely on subsection (B), arguing that failure to join King County would impair or impede King County's ability to protect its interest in its court rules and orders. (Dkt. No. 40 at 14-15; Dkt. No. 134 at 15-16.) Plaintiffs respond that Rule 19 does not apply here, because King County has not "claim[ed] an interest relating to the subject of the action." (Dkt. No. 51 at 3; Dkt. No. 146 at 15.)

Generally speaking, "[w]here a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder was 'unnecessary.'" *Altmann v. Austria*, 317 F.3d 954, 971 (9th Cir. 2002); *see also United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) ("Joinder is contingent . . . upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action."). However, the Ninth Circuit has held that a "public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices." *Equal Emp't Opportunity Comm'n v. Peabody West. Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010). The *Peabody* court reached this conclusion despite the fact the public entity in that case did not explicitly claim an interest in the litigation. *See id.*

Here, the Court has determined that King County GAOs are preempted to the extent they conflict with federal law; thus, their validity is in question. Under *Peabody*, King County has an interest in this lawsuit.

Plaintiffs protest that *Peabody* is not on point, because there, the Ninth Circuit relied on subsection (A) of Rule 19 to conclude that the court could not accord complete relief among the existing parties. (Dkt. No. 51 at 16; Dkt. No. 146 at 16.) While the *Peabody* court did make such

1 a finding under Rule 19(a)(1)(A), it also specifically stated that "under Rule 19(a)(1)(B), the [public entity] has an interest in the subject matter of this action." *See* 610 F.3d at 1081-82. This is a distinct conclusion that applies to the question currently before the Court.

Plaintiffs also cite *In re County of Orange*, 262 F.3d 1014, 1023 (9th Cir. 2001), where the Ninth Circuit held that certain public entities were not necessary parties "unless [they] themselves claim[ed] that they have such an interest." But in *Orange*, there was no risk that any rule or practice established by the entities would be impacted. *See id.* at 1022-23. *Orange* is thus distinct from this case.

*Peabody* establishes that the "claim of interest" requirement is satisfied here. Accordingly, King County is a necessary party that must be joined. The Court GRANTS the Merchant Defendants' and Friedman's motions to this effect.

### III. CONCLUSION

For the foregoing reasons, the Court rules on the motions as follows:

1. The Merchant Defendants' motion (Dkt. No. 40) is DENIED as to vagueness and GRANTED as to joining King County as a necessary party;
2. P&D's motion (Dkt. No. 61) is DENIED as to its interpretation of § 1692i, vagueness, separation of powers/federalism, and the WCPA, and GRANTED as to Auxier's civil conspiracy claim;
3. Asset's motion (Dkt. No. 133) is DENIED in full; and
4. Friedman's motion (Dkt. No. 134) is DENIED as to vagueness, standing, and the WCPA, and GRANTED as to joining King County as a necessary party.

//
//
//
//
//

DATED this 13th day of September 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE